USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12/3/20

**SERCARZ & RIOPELLE, LLP**
810 SEVENTH AVENUE, SUITE 620
NEW YORK, NEW YORK 10019
(212) 586-4900
FACSIMILE (212) 586-1234
www.sercarzandriopelle.com

MEMO ENDORSED

ROLAND G. RIOPELLE
MAURICE H. SERCARZ*

*ADMITTED IN NY & NJ

November 25, 2020

12/3/20

The Court will not modify the protective order. Your client is to mail the papers back to counsel right away.

/s/ Colleen McMahon

BY ECF

Hon. Colleen McMahon
Chief Judge
United States District Court
Southern District of New York
500 Pearl Street, Rm. 2550
New York, NY 10007

Re: *United States v. Robert Egan*,
20 CR 521(CM)

Dear Judge McMahon:

I am counsel to the Defendant Robert Egan in the above-referenced matter.

I write to the Court to seek a protective order that will permit my client to review the discovery I have previously provided to him in the privacy of his home. I ask the Court to include in its order a clause directing my client not to share any of the materials I have provided to him with any other person. I gave my client this directive myself, when I provided the materials at issue to him, but the additional force of a Court order is appropriate. The reasons for my application are set forth below.

### A. Procedural History/Background

My client is the former Secretary Treasurer of Local 638 of the Enterprise Association of Steamfitters (the "Union"). On October 1, 2020, he was arrested and charged in the above-referenced indictment together with 10 co-defendants with participating in what amounts to a commercial bribery conspiracy. As charged in the indictment, my client and his co-defendants all accepted payments from a confidential informant in exchange for an agreement to keep the Union for which they worked away from the informant's construction jobs. Although the indictment "ups the ante" of the charges by pleading the defendants' conduct as a RICO conspiracy, the indictment does not charge any defendant with any act of violence and there is no suggestion anywhere in the indictment that my client did anything to earn the title "Racketeer" apart from allegedly accepting the funds given to him by the government's informant. Nor does the

1

indictment allege that any of my client's co-defendants committed any act of violence against anyone, or ever threatened to do so.

On October 1, my client was released on modest but entirely fair terms of bail, which required him to sign an unsecured personal recognizance bond in the amount of $150,000, and to supply two co-signers for that bond within a week. Shortly after his release, my client fully satisfied the term of his bail, supplying his son and sister as co-signers on his bond. My client has been entirely compliant with the terms of his bail since his release.

After the execution of the Protective Order entered at Dkt. No. 48 on October 23, 2020, the government requested and the defense supplied a 2 terabyte hard drive to permit the government to produce discovery to the defendant. On November 13, 2020, the government provided an initial disclosure of materials to Mr. Egan, consisting of draft transcripts of the tape recordings made by the government's informant, video tapes of the meetings between the confidential informant and the defendants, and an index of materials obtained from Mr. Egan's phone when it was seized during his arrest. A copy of the government's November 13, 2020 letter to me concerning these disclosures is attached as Exhibit A. The government's letter did not designate the materials produced to Mr. Egan as "Sensitive" pursuant to the Protective Order entered on October 23, 2020. As the Court knows, any materials designated by the government as "sensitive" cannot be reviewed by my client except in my presence in my office.

Immediately after receiving the materials, I began to review them, and determined that the only materials my client should review at this point were the videotapes of his meetings with the government's informant, and copies of the draft transcripts of the meetings between the informant and all of the defendants charged in the indictment. I downloaded these materials to a thumb drive, and sent them to my client, who has been reviewing them at his home since I sent them to him on November 17, 2020.

Yesterday, I received an email from the US Attorney's Office advising me that it had failed to designate the materials produced to me on November 13 as "sensitive" due to an oversight. In its email, the government asked me to retrieve any materials I may have distributed and to treat all such materials as "'Sensitive' under the Protective Order going forward." I immediately wrote an email back to the government to let it know that I had already sent to Mr. Egan a subset of the materials it had produced to me. In my email, I asked the government to allow Mr. Egan to continue to review the materials I had sent to him in his home, and noted the dangers of in-person meetings at the present time. Last night at 1:03 a.m. the government responded to my email by requesting that I require my client to return to me by the end of next week the limited materials I had produced to him. I didn't read this email until this morning (I no longer have the energy of an Assistant US Attorney), but, after having done so, I determined to ask the Court to enter a protective order permitting my client to review the materials I have produced to him at home, for the following reasons. For the Court's reference, a copy of my email correspondence with the US Attorney's Office is attached as Exhibit B.

## B. Argument

A review of even the subset of discovery I have produced to my client would require multiple meetings at my office to complete. Each such meeting would require my client to drive in from his home in Suffolk County, and to meet me at my office in a high rise office building. It would also require me to travel to my office for each such meeting, and I anticipate that each such meeting would take several hours to complete.[1]

I am 61 years old, and suffer from hypertension. My client is approximately my age, and appears to be in good health, but I suspect he, like me, might be done in by Covid 19 if he catches it. Thus far, I have met with my client in person on only one occasion – the day the Court held a video conference in this case. Apart from that meeting, in order to proceed as safely as possible, we have communicated by phone and email. We are both concerned about the dangers of meeting in person, particularly now, as the Coronavirus spikes again in New York.[2]

As noted above, the indictment does not suggest that my client is violent or a danger to the informant or anyone else. The bail proposed by the government in this case confirms that my client is not a threat to the public or to the integrity of this case. This case is my client's first arrest, and in my own dealings with him, my client has been scrupulous in following my instructions. He seems genuinely concerned to avoid even the hint of impropriety, and insisted on coming to my office to attend our videoconference, because he was concerned he might not be capable of signing in to the videoconference without my assistance.

I am not aware of any evidence to suggest that Mr. Egan's possession of a subset of the materials produced by the government to the defendants will result in any danger to anyone. And I am not aware of any evidence to suggest that my client will use the materials he has to obstruct justice in this case. My own review of the videotapes and transcripts relating to my client's meetings with the informant confirm this. The videotapes depict long meals at which a great deal of Italian food and some wine is consumed, and conviviality reigns. I hear and see no threats made by anyone of any kind, but I do see plenty of back slapping and joviality. It is clear that my client may very well be a threat to a bowl of macaroni, a veal chop or a stuffed clam. He is no threat to anyone or anything else, including the integrity of the evidence in this case, which the government already has in its possession. In addition, I am very confident he will abide by my directive – which I ask the Court to reiterate – not to share any discovery materials with anyone else.

Given the very real physical danger that repeated meetings between Mr. Egan and me at my office would cause to both of us, I respectfully request that the Court enter a protective order that permits Mr. Egan to continue to possess and review the materials

---

[1] For the Court's information, I am working from home and rarely go to my office, in order to avoid infection to the degree I can.

[2] I respectfully submit that our concern is not misplaced. Just today, the Eastern District of New York has tightened its rules to prohibit further trials during the spike in Covid 19 infections.

3

that I have sent him. If the Court is inclined to grant this application, it may do so by signing this letter at the "So Ordered" signature line below.

I wish the Court, the government, my colleagues and the defendants continued good health, and a Happy Thanksgiving.

Respectfully submitted,

Roland G. Riopelle

Enc.

Cc: All counsel (By ECF transmission)

The defendant Robert Egan having made an application for a protective order to permit him to review discovery materials previously provided to him by his counsel, and good cause appearing to grant such application, now, therefore,

IT IS ORDERED that the defendant Robert Egan is permitted to review at his home the discovery materials previously provided to him by his counsel, and

IT IS FURTHER ORDERED, that the defendant Robert Egan shall not share the discovery materials previously provided to him or their substance with anyone other than his counsel, or as allowed by the Protective Order that is filed as Dkt. No. 48 in this case.

IT IS SO ORDERED:

_____
HON. COLLEEN MCMAHON
U. S. D. J.